**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: August 22 2019**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 17-33088 |
| | ) | |
| Calvin D. Murrell and | ) | Chapter 7 |
| Rhonda L. Murrell, | ) | |
| | ) | Adv. Pro. No. 18-3006 |
| Debtors. | ) | |
| | ) | Judge John P. Gustafson |
| Calvin D. Murrell, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Edsouth, et al, | ) | |
| | ) | |
| Defendant. | | |

### MEMORANDUM OF DECISION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Calvin D. Murrell ("Plaintiff") commenced this adversary proceeding by filing a Complaint [Doc. #1] on January 16, 2018, against various education loan defendants. On May 31, 2019, an Agreed Motion substituted Educational Credit Management Corporation ("ECMC" or

"Defendant") in as a defendant in this adversary case. [Doc. #63]. ECMC and the U.S. Department of Education ("Co-Defendant") have filed motions for summary judgment, requesting that the court determine that Plaintiff's student loans are non-dischargeable under 11 U.S.C. §523(a)(8).

Accordingly, this proceeding is now before the court for decision on Defendant's Motion for Summary Judgment ("Motion") [Doc. #55], filed on May 13, 2019. Per the court's request, Defendant subsequently filed a supplement to their Motion for Summary Judgement [Doc. #64] on May 31, 2019. Co-Defendant U.S. Department of Education filed its own Motion for Summary Judgment [Doc. #69] on June 7, 2019. Plaintiff initially had until June 7, 2019 to file a response, but was granted an extension through June 14, 2019. [Doc. #68]. Plaintiff nevertheless failed to file any response to either of the Motions for Summary Judgment, and ECMC subsequently filed a Certificate of No Response. [Doc. #71].

In its Motion, Defendant ECMC argues that summary judgment is warranted because Plaintiff has failed to satisfy any of the three prongs of the "undue hardship" test under 11 U.S.C. §523(a)(8). Co-Defendant U.S. Department of Education's Motion for Summary Judgment echoes and elaborates on the arguments made in Defendant's Motion.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(b) as a civil proceeding arising in or related to a case under Title 11. This proceeding has been referred to this court by the district court under its general order of reference. 28 U.S.C. §157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine the dischargeability of debts are core proceedings that the court may hear and decide. 28 U.S.C. §157(b)(1) and (b)(2)(I).

This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the submitted materials, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court finds that Plaintiff's student loan debt cannot be discharged as an undue hardship.

Therefore, ECMC and U.S. Department of Education's Motions for Summary Judgment will be granted.

## **FINDINGS OF FACT**

Plaintiff was last employed at the beginning of 2000.[1] [Doc. #55, Exhibit I, p. 8]. Plaintiff asserts that he stopped working due to knee and back injuries, the latter of which occurred in January of 2000. [*Id*.]. Since leaving the workforce, Plaintiff has attended the following educational institutions: Stautzenberger College between 2000 and 2002; Spring Arbor College in 2003; and Owens Community College between 2006 and 2010 (the "Colleges"). [*Id.*, pp. 13-14]. While attending the Colleges, Plaintiff accumulated student debt in the total amount of $72,940.28. [*Id.*, Exhibit A, p. 2].

Plaintiff attended the Colleges full-time in the hopes of pursuing various career options. [Doc. #55, Exhibit B, pp. 4, 7, 10]. He graduated from Stautzenberger College with a degree in web tech, but failed to complete the human resources management and nursing programs at Spring Arbor College and Owens Community College, respectively. [*Id.*, Exhibit I, pg. 14]. Plaintiff explained that the web tech program failed to provide him with the relevant skills necessary to become a web designer. [*Id.*, Exhibit B, p. 4-5]. As such, he has not been able to find work in this field. [*Id*.].

Plaintiff's other attempt to find work has been with the Social Security "ticket to work" program. [Doc. #55, Exhibit I, p. 8]. Through this program, Plaintiff interviewed for an "at-home" job opportunity, but did not succeed in securing the position. [*Id.*, Exhibit B, pp. 12-13]. Plaintiff has not applied for any other jobs through the "ticket to work" program since no other "at-home" opportunities have been offered. [*Id*.]. Plaintiff stated he can only work from home due to his injuries. [*Id*.]. However, according to a Physical Performance Evaluation performed by Anne Schroeder, PT on May 15, 2018, Plaintiff is able to tolerate a sedentary level of work for 8 hours a day at 40 hours a week. [Doc. #55, Exhibit H, p. 14].

In 2017, Plaintiff received Social Security Disability, totaling $13,068.00 for the year. [Doc. #55, Exhibit E, p. 2]. Plaintiff's wife is employed as a kitchen aid, and earned $31,617.32 in 2017. [*Id.*, Exhibit I, p. 10; Exhibit E, p. 2]. That year, Plaintiff and his co-debtor wife had total income, including Plaintiff's Social Security benefits, of around $44,685.00 and an adjusted gross income of $32,893.00. [*Id.*, Exhibit E, p. 2].

---

1/ The record is unclear on precisely when Plaintiff stopped working due to his injuries. For purposes of this decision, the court will utilize the date provided by Plaintiff (January of 2000) in his response to Defendant's interrogatories. [Doc. #55, Exhibit I, p. 8].

Reviewing Plaintiff's monthly expenses, Plaintiff pays bills related to DirectTV, internet and phone, in the amount of $290-$550 a month. [Doc. #55, Exhibit B, pp. 16-19]. Plaintiff explained that he considered his DirectTV, internet, and phone costs to be normal household bills. [*Id.*, p. 16]. According to the affidavit of Collin Yanez, litigation specialist at ECMC, Plaintiff's household size of two and adjusted gross income of $32,893.00 could qualify him for monthly student loan payments between $63-$94 under an income-based repayment plan. [Doc. #64, Exhibit A, p. 2]. Plaintiff stated that he is capable of making payments within that range pursuant to a repayment plan. [Doc. #55, Exhibit B, p. 20]. However, Plaintiff admitted that, to date, he has never made any payments on any of his student loans. [*Id.*, p. 15].

Based upon discovery sanctions imposed earlier in this case, Plaintiff was "precluded from testifying and arguing with reference to the documents Plaintiff-Debtor failed to produce, in violation of this court's order." [Doc. #49, p. 6].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn" in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The moving party can discharge its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact, or by showing that there is no such issue by pointing

out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554.

Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*. "The non-moving party, however, must provide more than mere allegations or denials ... without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). *Anderson* clearly states that the allocation of the substantive evidentiary standard of proof is a factor that the court should consider in deciding whether to grant summary judgment. 477 U.S. at 252-255, 106 S.Ct. at 2512-2514.

When faced with an unopposed motion for summary judgement, a trial court must conduct its own independent threshold inquiry into the sufficiency of the motion's legal and factual basis. *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). In other words, "the court must indeed intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." *Id*. at 407.

**II. The Exception to Discharge Under 11 U.S.C. §523(a)(8)**

Plaintiff's Complaint seeks to discharge his student loans under 11 U.S.C. §523(a)(8). Section 523(a)(8) permits the discharge of a student loan obligation if "excepting such debt from discharge...will impose an undue hardship on the debtor and the debtor's dependents…."

While the Bankruptcy Code leaves the term "undue hardship" undefined, the Sixth Circuit has adopted the test set forth in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) for determining the existence of "undue hardship." *See*, *Oyler v. Educ. Credit Mgmt. Corp.* (*In re Oyler*), 397 F.3d 382, 385 (6th Cir. 2005); *In re Chenault*, 586 B.R. 414, 421 (6th Cir. BAP 2018). Under the *Brunner* test, the debtor must prove each of the following three elements: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *Id*. at 385 (quoting *Brunner*, 831 F.2d at 396).

5

A debtor seeking an undue hardship discharge bears the burden of proof by a preponderance of the evidence. *Chime v. Suntech Student Loan* (*In re Chime*), 296 B.R. 439, 443 (Bankr. N.D. Ohio 2003). Because the debtor bears the burden of establishing dischargeability under section 528(a)(8), the party opposing dischargeability need only prevail on any one of the three elements of the *Brunner* test in order to dispose of the debtor's claim. *See*, *In re Miraglia*, 559 B.R. 481, 486 (Bankr. N.D. Ohio 2016); *In re Hubbard*, 529 B.R. 250, 255 (Bankr. E.D. Tenn. 2015); *see also*, *Oyler*, 397 F.3d at 385-386 (reversing based on debtor failing the second prong of the *Brunner* test).

**A. The First Element of the *Brunner* Test**

Upon review of Defendant's Motion, the evidence submitted, and the record of this adversary proceeding, the court finds that Defendant prevails as to the first element of the *Brunner* test.

The first prong of the *Brunner* test contemplates that a debtor is entitled to maintain a minimal standard of living, which includes basics such as food, clothing, shelter, medical care and transportation for himself and any dependents, before he is required to repay student loan debts. *Pierson v. Navient* (*In re Pierson*), 2018 WL 4849658 at *4, 2018 Bankr. LEXIS 3106 at *12 (Bankr. N.D. Ohio October 4, 2018); *In re Doremus*, 2014 WL 1168906 at *3, 2014 Bankr. LEXIS 1115 at *7 (Bankr. N.D. Ohio Mar. 21, 2014). Thus, when applying the "minimal standard of living" test, a court should evaluate a debtor's household income and expenses, with a particular focus on what expenses are necessary to maintain a realistic basic standard of living. *Pierson*, 2018 WL 4849658 at *4, 2018 Bankr. LEXIS 3106 at *12. After providing for necessary expenses, the court is to determine whether the debtor has income leftover with which to pay his student loan debts. *Id*.

To meet his "minimal standard of living" burden, a plaintiff must show that he cannot, based upon his current income and expenses, maintain both a "minimal" standard of living and repay his student loans. *McKenzie v. Educ. Credit Mgmt. Corp.* (*In re McKenzie*), 2012 Bankr. LEXIS 1344, at *7 (Bankr. D. Vt. Mar. 30, 2012). This "minimal standard of living" analysis has been held to place a debtor's lifestyle - particularly expenses - under more rigid scrutiny than is utilized under Sections 707(b) or 1325. *See*, *In re Miller*, 409 B.R. 299, 319-320 (Bankr. E.D. Pa. 2009)(quoting *In re Savage*, 311 B.R. 835, 840 n.7 (1st Cir. BAP 2004)).

A minimal standard of living includes expenses for basic necessities such as food, shelter,

18-03006-jpg    Doc 72    FILED 08/22/19    ENTERED 08/22/19 16:29:36    Page 6 of 10

clothing and medical treatment. *Tenn. Student Assistance Corp. v. Hornsby* (*In re Hornsby*), 144 F.3d 433, 438 (6th Cir. 1998)(citing *In re Rice*, 78 F.3d 1144, 1151 (6th Cir. 1996). And while a debtor need not live in abject poverty to satisfy the first *Brunner* prong, a debtor must make a significant effort to "live within the strictures of a frugal budget for the foreseeable future." *Larson v. United States* (*In re Larson*), 426 B.R. 782, 789 (Bankr. N.D. Ill. 2010). In other words, a debtor seeking discharge of his loans is expected to maximize income and minimize expenses. *Hornsby*, 144 F.3d at 438; *Oyler*, 397 F.3d at 385. The fact that a debtor may be "financially burdened" by having to pay on his student loans is not enough to end the first prong's inquiry.[2] *Hornsby*, 144 F.3d at 438.

In the case at hand, the court finds that Plaintiff would be able to maintain a minimal standard of living even if his student loans debts were not discharged. Plaintiff and his wife have a gross annual income of roughly $44,685.00 and an adjusted gross income of $32,892.00. [Doc. #55, Exhibit E, p. 2]. Defendants point out that this is well above the 2018 poverty guideline of $16,460.00 set by the Department of Health and Human Services ("DHHS") for a family of two located in the 48 contiguous states. Even though the majority of this income is earned by the Plaintiff's wife, case law makes it clear that total household income, including that of a non-debtor spouse, must be considered in the "minimal standard of living" analysis. *See*, *In re Davis*, 373 B.R. 241, 248 (W.D.N.Y. 2007); *Pierson*, 2018 WL 489658 at *4, 2018 Bankr. LEXIS 3106 at *12; *James v. ACS (In re James)*, 2017 WL 1240217, 2017 Bankr. LEXIS 883 (Bankr. N.D. Ohio March 31, 2017). Thus, the fact that Plaintiff's household income is significantly above the DHHS poverty line for a family of two is a factor, although not a dispositive factor, favoring Defendants argument that Plaintiff's student loans do not constitute an undue hardship.

The record before the court suggests that Plaintiff could make adjustments to his expenses that would allow him to pay at least some amount towards his student loan obligations. *See*, *Burton v. Educ. Credit Mgmt. Corp* (*In re Burton*), 339 B.R. 856, 870 (Bankr. E.D. Va. 2006) ("[A] court should examine the debtor's standard of living, with a view toward ascertaining whether the debtor

---

2/ The court notes that these requirements are based on the *Brunner* test's use of the term "minimal standard of living." Courts have held that this "minimal standard" does not mean "preexisting" (i.e., the lifestyle the debtor has been living) or "comfortable," but also does not mean "reduced to poverty." *Nixon v. Key Educ. Resources (In re Nixon)*, 453 B.R. 311, 327 (Bankr. S.D. Ohio 2011); *see also*, *Kelly v. Mich. Fin. Auth. (In re Kelly)*, 496 B.R. 230, 235 (Bankr. M.D. Fla. 2013)(a debtor "may not necessarily maintain her previous standard of living"); *McLeod v. AFSA Data Corp. (In re McLeod)*, 197 B.R. 624, 628 (Bankr. N.D. Ohio 1996)("The first prong of the *Brunner* analysis requires more than a showing of tight finances.").

has attempted to minimize . . . expenses.")(quotation omitted). Plaintiff currently spends between $290-$550 a month on DirectTV, internet and phone. [Doc. #55, Exhibit B, pp. 16-18]. These expenses indicate that Plaintiff could engage in belt-tightening regarding "recreation" expenses. *See*, *Nixon v. Key Educ. Res.* (*In re Nixon*), 453 B.R. 311, 326-27 (Bankr. S.D. Ohio 2011)(identifying food, shelter, basic utilities, personal hygiene products, transportation, health care, clothing, and "some small diversion or source of recreation" expenses as components of a minimal standard of living)(citation omitted); *In re Sexton*, 520 B.R. 578, 584 (Bankr. W.D. Ky. 2014)(clearest evidence that a debtor has satisfied the first prong of *Brunner* is for the debtor to minimize expenses).

The court accepts that a minimal standard of living can include modest recreation expenses, but the payment of $290-$550 a month in nonessential expenses demonstrates that Plaintiff has at least some measure of income flexibility, flexibility that the Debtor could utilize in making payments on his student loans. While Plaintiff's DirectTV, internet, and phone expenses do not indicate "an unreasonable standard of living," the minimal standard of living contemplated by the *Brunner* test "is much more stringent than a standard of reasonableness." *Aaron v. U.S. Dept. of Educ.* (*In re Aaron*), 2016 WL 3483208 at *4, 2016 Bankr. LEXIS 2329 at *10 (Bankr. N.D. Ohio June 20, 2016); *see also*, *Conner v. U.S. Dep't. of Educ.* (*In re Conner*), 526 B.R. 218, 226 (Bankr. E.D. Mich. 2015)("cell phones, cable and internet are not part of a minimal standard of living."), *aff'd*, 2016 WL 1178264, 2016 U.S. Dist. LEXIS 40037 (E.D. Mich. Mar. 28, 2016); *see also*, *Hornsby*, 144 F.3d at 438 ("The bankruptcy court did not question what seem like an exorbitant bill for long distance telephone service or the Hornsbys' monthly bill of $100 for cigarettes.").

Further, based upon the affidavit of Collen Yanez [Doc. #64, Exhibit A, p. 2], which the court finds to be credible and undisputed, Plaintiff could qualify for monthly student loan payments between $63-$94 under an income-based repayment plan. [*Id.*]. Given Plaintiff's household income and capacity to reduce non-essential expenses, monthly payments between $63-$94 appear feasible for Plaintiff. In fact, Plaintiff himself stated that he would be able to make payments within the above range during his deposition. [Doc. #55, Exhibit B, p. 20].

Accordingly, the court concludes that Plaintiff has asserted expenses that exceed the "minimum" necessary expenses allowed by *Brunner*. Additionally, repayment of the student loans under an income-based repayment plan appears not only possible, but reasonable pursuant to a "minimal standard of living" budget. *See*, *Connor*, 526 B.R. at 228. As such, the Debtor has not

8

established the "minimal standard of living" element of the *Brunner* test and is not entitled to a discharge under 11 U.S.C. § 523(a)(8).

Because the court finds that Defendant has prevailed as to the first element of the *Brunner* test, the court need not address the other two *Brunner* elements.

## **CONCLUSION**

A court, in reviewing a motion for summary judgment, holds the moving party to the burden established by the plain language of Rule 56: the moving party must show "that there is no genuine issue as to material fact, and that the moving party is entitled to a judgment as a matter of law." *Guarino*, 980 F.2d at 405. The fact that the non-moving party does not respond, or that the motion may otherwise seem to be unopposed, does not change this requirement or lessen the burden on the moving party or the court. *See Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991).

After examining the evidence and arguments provided by both Defendant and Co-Defendant, the court finds that both Defendants have established their entitlement to judgment as a matter of law. Despite alleging that his student loans impose an undue hardship, Plaintiff's budget shows that he spends hundreds of dollars a month in nonessential expenses related to DirectTV, internet, and phone services. [Doc. #55, Exhibit B, pp. 16-19]. Further, Schedules I and J show "monthly net income" of $99.47. [Case No. 17-33088, Doc. #1, p. 40]. In addition, Plaintiff appears eligible for various income-based repayment plans that would limit his monthly student loans payment to a small fraction of his household monthly income. The record also reflects that Plaintiff has not engaged in any sort of budgeting in pursuit of meeting his student loan repayment obligations. In other words, Plaintiff has not engaged in the sort of belt-tightening required of those who seek to discharge their student loans in bankruptcy. *See*, *Burton*, 339 B.R. at 870; *Nixon*, 453 B.R. at 326-27.

Even when viewed in the light most favorable to Plaintiff, the facts before the court are amenable to only one conclusion: Plaintiff cannot show an inability to maintain a minimal standard of living while making payments on his student loans. Thus, Plaintiff cannot prevail under the first element of the *Brunner* test and the court finds that excepting his student loan debt from discharge does not constitute an undue hardship under the controlling caselaw. Accordingly, Summary Judgment will be granted in favor of Defendants.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendants Educational Credit Management Corporation and U.S. Department of Education's Motions for Summary Judgment [Doc. ##55, 69] be, and hereby are, **GRANTED**. A separate judgment shall issue consistent with this memorandum.